Reese, J.
delivered the opinion of the court.
It appears from the proofs in this cause that in 1815, Mary Currie, then of North Carolina, a widow, of advanced age, having four children, one son and three married daughters, transferred to them by bill of sale the greater portion, of her property, amounting in value to about the sum of one thous and two hundred dollars each. The property not so transferred consisted of two negro women. It seems tl: in consequence of these transactions a controversy between her and her children on the one side, and her children, six in number, on the other, to adjust which, erence to arbitrators took place, who awarded that o the untransferred property the step-children should be at the death of the widow, tho sum of six hundred dolía" and that for the ultimate payment of that sum security should be given presently; and accordingly Mitchell, Bowman and Love, the three sons-in-law of Mary Currie, gave their obligations for the payment at her death of the said sum of money. Whereupon the said Mary Currie executed, the following very inartificial instrument, to wit:
“Know all men by these presents, that I, Mary Currie, of the county of Person and State of North Carolina., out of my good pleasure, and for reasons not necessary here to. *172 mention, have thought proper to state, sanction and subscribe the following particulars: In the first place, it is my g00cj pleasure to retain in my own hands, and to my proper aiwj pfily use, the property not otherwise given in bills of sale.to my children; that the thing, may be better understood, the following pieces of property I claim a free and unrestrained use of during my natural life, to wit, Milla, Flora, the proceeds'of- any sales that have been or that may be made, either public or private: no person shall have a right or claim to act or transact my businpss as relating to the above particulars, without my consent or approbation. Secondly, in order to meet the award of the arbitrators who sat in Caswell county, October, 1813, composed of said Van-hook, Daniel Mitchell and Gab. Lea, as that award respects me, my step-children and my own children, I agree to throw the above pieces of property into the hands of my sons-in-law, James H. Bowman, William Mitchell and John Love, who are requested to discharge the above debt immediately afte.i, my. death, and the balance, if any, to distribute equally among my own children. No part' of the above property shall be applied otherwise than to the wants and support of the said Mary Currie while she lives, and after death to be faithfully and immediately applied to discharge the amount of the above award. In testimony of my approbation tp the above instrument, I have set my hand'and seal the day and date above written. her
Test, Joseph Taylor, Mary jx| Currie, [Seal.]
Sam’e. McMaury. mark.
“JSÍ. B. All my property in mv hands not immediately in use I agree to confer with and to be party with my securities in managing to the best advantage for the benefit of all; and for the satisfaction of my children I promise to consult, and by and with the consent of those concerned as my securities, only to execute my more material affairs.” .[Signed and witnessed as above.]
As, by a subsequent instrument, Mary Currie gave the above mentioned property to her son, subject to the payment of the award, the question arises upon the first instrument above set forth, whether it be testamentary and there *173 fore revocable, or whether it constitutes an effectual and valid transfer and disposition of the property mentioned. In substance the instrument is, “Know all men by these presents, that I, Mary Currie, agree to throw into the hands of my sons-in-law and sureties two negro women and other pieces of property, out of which, immediately on my death, they shall faithfully pay a debt due by award to my six stepchildren, and for which they are sureties, and the balance of the proceeds of said property they shall equally divide among my own children; but I reserve to myself the' use and enjoyment of the said property for my support during my natural life, agreeing, however, to consult with and act by the advice of my said sureties in all material affairs touching the same;” or more briefly still, “I hereby throw into the hands of my sons-in-law and sureties two negro women and other property, (they permitting me the use and enjoyment of the same during life,) at my death, to indemnify themselves as -my sureties, by paying the debt then due to my step-children by an award, and to divide the balance among my children, namely, their wives and my son.” The above, is a transaction inter vivos, and the legal effect of it is to reserve a life estate to the grantor, and to vest a remainder in the sons-in-law in trust, to indemnify themselves as sureties for the award by paying the same, and in trust to pay the balance to their wives and brother-in-law, the children of the grantor. That a life estate may be reserved and a good remainder thus created in slaves, is determined upon full consideration and deliberate argument in the case of Cains and wife vs. Marley, 2 Ter. Rep. 582. That the words “throw into the hands of my sons-in-law,” with the words which follow them, however unusual and in-, artificial, want the force and efficacy of the words give or transfer, &c., it would be difficult to maintain. They create a present interest in the remainder. The instrument in question is more than a mere deed of gift. It is based upon a valuable consideration, the debt to the step-children and the liability of the sons-in-law; its object is to pay the. former, and to indemnify the latter; and as to the surplus,, it is a donation in trust for all the children of the grantor. *174 To hold it testamentary and revocable would defeat the whole intention of the arrangement and the entire scope of the instrument. It would be to permit Mary Currie to wrest from the hands of her sons-in-law and sui'eties the property thus thrown by her into them, so as to leave the stepchildren without the payment of their debt, her sons-in-law and sureties without their indemnity, and the children without the surplus of the remainder. This view, as to the construction and legal effect of the instrument, is decisive of the whole case, and renders it unnecessary to discuss any other questions which are presented by the record. The bill will be dismissed as well as the cross bill, and the complainants will severally pay their own costs. The costs of the defendants in the original bill will be paid by the administrator out of the funds in his hands.